FILED

2019 JAN -8  P 2: 23

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:19cr___7___(MPS) |
| | : | |
| v. | : | VIOLATION: |
| | : | |
| ALAN GIACOMI | : | 18 U.S.C. § 1343 (Wire Fraud) |

INFORMATION

The United States Attorney charges:

COUNT ONE
(Wire Fraud)

The Defendant

1.      At all times relevant to this Information, the defendant ALAN GIACOMI was an attorney licensed to practice law in the State of Connecticut and operated a law practice in Waterbury, Connecticut.

2.      GIACOMI was the signatory on an Interest on Lawyers' Trust Account ("IOLTA") held at Webster Bank, a bank that was insured by the Federal Deposit Insurance Corporation. GIACOMI also held an account at Webster Bank in the name of "Alan M. Giacomi Attorney at Law" (hereafter, "Attorney at Law Account"), and a personal account at Webster Bank (hereafter, "Personal Account").

3.      Clients N.S. and A.S., R.C. and H.C., C.A., and A.M., whose identities are known to the United States Attorney, were represented by GIACOMI.  Victim A.P., whose identity is known to the United States Attorney, was a family friend of GIACOMI's.

### Scheme to Defraud the Victims

4.      From in or about October 2013 to in or about February 2017, in the District of Connecticut and elsewhere, GIACOMI knowingly, willfully, and with the intent to defraud, devised and intended to devise a scheme and artifice to defraud clients of his law practice and other victims by means of materially false and fraudulent pretenses, representations, and promises, as more fully set forth below.  During the scheme, GIACOMI defrauded various victim clients out of ~~approximately $421,215.69.~~ *at least $411,715.69* [Gw]

5.      As part of the scheme, GIACOMI would transfer client funds to his Attorney at Law Account, and then subsequently transfer those funds to his Personal Account, and would use funds from one client to pay obligations owed in connection with his representation of one or more previous clients.

### Purpose of the Scheme to Defraud

6.      The purpose of the scheme and artifice to defraud was to derive profit for GIACOMI so that he could use client funds on personal expenses and unrelated matters.

### The Manner and Means of the Scheme

7.      As part of the scheme, GIACOMI would use his IOLTA to accept client funds to hold in trust, including proceeds from real estate sales.

8.      As further part of the scheme, GIACOMI received funds into his IOLTA on or about February 6, 2017, in the amount of $153,739.00, of which $145,685.58 was to be disbursed to N.S. and A.S. pertaining to the sale of N.S. and A.S.'s real property.

9.      As further part of the scheme, GIACOMI repeatedly turned down N.S.'s requests to meet to discuss disbursing the money and falsely told N.S. that it would be "wrapped up" the

week that GIACOMI received the funds in trust. GIACOMI told N.S. that N.S. was "wound tight" when N.S. insisted on return of his money. N.S. ultimately went to GIACOMI's ~~employee's~~ friend's sm house to retrieve N.S.'s file. GIACOMI failed to disburse any funds to N.S. and A.S.

10.     As further part of the scheme, GIACOMI would transfer funds received into his IOLTA to his Attorney at Law Account, and then to his Personal Account. For instance, within approximately eleven days of his February 6, 2017, receipt of the $153,739.00 relevant to N.S. and A.S.'s sale of real property, GIACOMI transferred a total of approximately $136,000 to his Attorney at Law Account and a total of $35,000 from his Attorney at Law Account to his Personal Account, unbeknownst to N.S. and A.S. and without their permission to do so.

11.     As further part of the scheme, GIACOMI received funds in trust on or about September 28, 2016, in the amount of $176,495.37 pertaining to the sale of R.C. and H.C.'s real property. These funds were to be disbursed to R.C. and H.C. GIACOMI failed to disburse the funds to R.C. and H.C. GIACOMI falsely told R.C. and H.C. that he would have his paralegal disburse the funds, but that did not happen. GIACOMI eventually stopped returning R.C. and H.C.'s calls, emails, and text messages.

12.     As further part of the scheme, GIACOMI would also use funds received from certain clients to pay debts in unrelated matters. For instance, upon the September 28, 2016, receipt of the $176,495.37 relevant to proceeds of a real estate sale pertaining to R.C. and H.C. in September 2016, he paid a total of $129,000 related to matters not related to R.C. and H.C. and/or the sale of their real property.

13.     As further part of the scheme, on August 21, 2014, GIACOMI deposited into his IOLTA a check for $17,980.47 pertaining to Client C.A., who is in her 90s. GIACOMI falsely

endorsed C.A.'s name on the check in connection with the deposit.  GIACOMI never returned the funds.

14.     As further part of the scheme, on January 28, 2015, GIACOMI deposited into his IOLTA a check for $35,604.17 pertaining to Client A.M., who is in her 90s, related to paying for A.M.'s healthcare expenses.  GIACOMI did not pay the full expenses or return the funds.

15.     As further part of the scheme, GIACOMI convinced Victim A.P. to invest $45,000 in a real estate project, falsely promising that A.P. would receive $50,000 plus 6% interest within 90 days.  On April 12, 2016, GIACOMI deposited A.P.'s $45,000 check into his IOLTA.  A.P. never received repayment of the $45,000, or the promised payoff.  GIACOMI used $38,682.31 of A.P.'s money to pay for an unrelated real estate matter.

<u>Execution of the Scheme to Defraud</u>

16.     Paragraphs 1-15 are incorporated by reference.

17.     On or about February 17, 2017, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, GIACOMI knowingly caused the transmission of certain items by wire communication in interstate commerce, namely, by initiating an online transfer from his IOLTA to his Attorney at Law Account in the amount of $60,000, and a subsequent online transfer from his Attorney at Law Account to his Personal Account in the amount of $26,000, through use of Webster Bank's servers located outside of the State of Connecticut.

All in violation of Title 18, United States Code, Section 1343.

UNITED STATES OF AMERICA

JOHN H. DURHAM
UNITED STATES ATTORNEY

SARALA V. NAGALA
ASSISTANT UNITED STATES ATTORNEY