UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>    v.<br><br>ALAN GIACOMI,<br><br>    *Defendant.* | No. 3:19-cr-00007 (MPS) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

    Defendant Alan Giacomi, who is serving a sentence of imprisonment at Danbury Federal Correctional Institution in Connecticut, has filed a motion under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment to time served with a period of home confinement due to the dangers posed by the COVID-19 virus in combination with his underlying health conditions. ECF Nos. 45, 46. The Government filed a memorandum in opposition, ECF No. 50, to which Giacomi filed a reply brief, ECF No. 63. I have carefully considered all these materials, as well as Giacomi's medical, disciplinary, and other records submitted along with his and the Government's memoranda. ECF Nos. 41-1, 47, 49-1, 52, 61. For the reasons that follow, Giacomi's motion is denied.

    On January 8, 2019, Giacomi waived indictment and pled guilty to a one-count information charging a violation of 18 U.S.C. § 1343 (wire fraud). ECF Nos. 1-2, 4. On May 17, 2019, I sentenced Giacomi to 41 months of imprisonment, to be followed by three years of supervised release, and ordered Giacomi to pay restitution to his victims. ECF Nos. 35, 37. Giacomi self-surrendered to the Bureau of Prisons ("BOP") on July 26, 2019 and has served approximately 17

months of his sentence. ECF No. 37 at 2; ECF No. 46 at 1. His projected date of release is December 4, 2021. ECF No. 61 at 33.[1]

> Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:
>
> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Under this section, as modified by the First Step Act of 2018, Pub. L. No.115-391, 132 Stat. 5239, I am free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). As a result, because Giacomi – and not the Bureau of Prisons ("BOP") – brings the instant motion, I am not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A), *see* U.S.S.G. § 1B1.13, which the Second Circuit recognized as applying only to motions for sentence reduction brought by the BOP. *Brooker*, 2020 WL 5739712, at *1, 6 ("hold[ing] that Application Note 1(D)

---

[1] The December 4, 2021 projected date of release was provided on Giacomi's incident report dated October 23, 2020. ECF No. 61 at 33. According to the BOP's website, however, Giacomi's projected date of release is July 3, 2022. This could mean that the December 4, 2021 date is a mistake or that it is the projected date for transfer to home confinement or to a halfway house – all still in BOP custody – rather than the date for release on supervised release. *See* Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc (last visited December 28, 2020). In addition, it appears that his recent adverse disciplinary finding, which I discuss in more detail below, may have contributed to his loss of an earlier projected date of release to home confinement—in early December *2020*. *See* ECF No. 46 at 2; ECF No. 61. The parties' briefs do not clarify whether any suspension of RDAP programming has contributed to this delay as well. *See* ECF No. 46 at 2.

2

does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act . . ."; rather, this Guideline "only [applies] to those motions that the BOP has made" under this Act). However, "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." *Brooker*, 2020 WL 5739712, at *8 (citing 28 U.S.C. § 994(t)) (emphasis in original).

Therefore, I may reduce Giacomi's term of imprisonment, after considering the Section 3553(a) factors, if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) I find that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

As the Government acknowledges, ECF No. 50 at 2, Giacomi has met the exhaustion requirement because the Warden denied his first request on April 28, 2020. ECF Nos. 41 at 7-8, 41-1. As to the merits of Giacomi's motion, I find that, when all of the circumstances including the Section 3553(a) factors are considered, he has not shown that a reduction of his term of imprisonment is warranted.

Giacomi argues that he is at high risk for serious illness or death from COVID-19 because of his obesity, hypertension, and a history of smoking and asthma. ECF No. 45 at 1. I address each of these conditions below, after taking account of Giacomi's age.

Giacomi is currently 47 years old. ECF No. 36 at 3. According to the Centers for Disease Control and Prevention ("CDC"), "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk."[2] Age-related risk increases on a sliding scale, and the "greatest risk for severe illness from COVID-19 is among those aged 85 or older."[3] Thus, with respect to

---

[2] Centers for Disease Control and Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited December 23, 2020).
[3] *Id.*

3

Giacomi's age, he does not face a substantial risk of severe illness from COVID-19, but, based on my discussion of the Section 3553(a) factors below, I would reach the same result even if he did.[4]

As the Government concedes, ECF No. 50 at 8, Giacomi's obesity places him at increased risk of severe illness from COVID-19 under the CDC guidelines. As of August 2019[5], Giacomi weighed 208 lbs which, at 5'7", yields a BMI of 32.6.[6] ECF No. 47 at 4. According to the CDC, "[p]eople of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19."[7] Obesity, defined as a BMI of 30 or greater, is one of these underlying medical conditions.[8]

With respect to hypertension, it is not clear whether Giacomi faces any increased risk. According to the CDC, having "hypertension (high blood pressure) . . . might increase [a person's] risk of severe illness from COVID-19."[9] Giacomi points to his recent blood pressure readings, which are consistent with hypertension, as evidence of this risk factor, and he asserts that he was diagnosed with hypertension.[10] *See* ECF No. 46 at 10. But Giacomi does not indicate that he has

---

[4] *Id.* (individuals in the 40-49 year age range face a 3x greater risk of hospitalization and 10x greater risk of death than individuals in the 18-29 year age range; individuals in the 65-74 year age range face a 5x and 90x greater risk, respectively, compared to the same 18-29 year range; and individuals above 85 years face a 13x and 630x greater risk, respectively, with the same comparison group).

[5] Giacomi reports that he has been unable to weigh himself since that time, but that he has gained "a significant amount of weight since then . . . ." ECF No. 46 at 9. But given that he was not morbidly obese as of August 2019, and that he has not indicated any medical condition that precludes him from controlling his weight, I note that Giacomi may be able to reduce his medical vulnerability to COVID-19 based on his BMI through proper diet and exercise. Indeed, as of August 2019, he had lost weight since February 23, 2017, when his records indicate that he weighed 219 pounds. ECF No. 47 at 8.

[6] Centers for Disease Control and Prevention, *Adult BMI Calculator*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited December 23, 2020).

[7] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 23, 2020).

[8] *Id.*

[9] *Id.*

[10] Blood pressure measurements fall into four general categories:
    Normal blood pressure is below 120/80 mm Hg.
    Elevated blood pressure is a systolic pressure ranging from 120 to 129 mm Hg and a diastolic pressure

4

ever been treated for hypertension, and the records he cites for his diagnosis do not appear to support his assertion. Specifically, Giacomi points to his medical records from Saint Mary's Hospital from a visit on October 20, 2016 (not October 24, 2018, as he suggests, *id.*). ECF No. 47 at 10. This record indicates that Giacomi conducted an exercise treadmill test in which his resting blood pressure was 168/100 and his peak blood pressure was 202/100. *Id.* The record states, under the heading "IMPRESSION", as follows: "3. Hypertension with mildly abnormal hypertensive blood pressure response. 4. Clinical correlation is advised for blood pressure." *Id.* The plain language of this record does not appear to indicate a clinical diagnosis of hypertension. Indeed, according to the Mayo Clinic, a "doctor will likely take two to three blood pressure readings each at three or more separate appointments before diagnosing [a patient] with high blood pressure. This is because blood pressure normally varies throughout the day, and it may be elevated during visits to the doctor [due to] []white coat hypertension[]."[11] Thus, it is not clear that Giacomi suffers from hypertension or whether he faces any increased risk of severe illness from COVID-19 based on his blood pressure readings. In any case, based on my discussion of the Section 3553(a) factors below, I would reach the same result even if he did.

Lastly, Giacomi points to his history of smoking and asthma as factors that increase his medical vulnerability to COVID-19. ECF No. 46 at 14-15; ECF No. 47 at 12 (Giacomi's handwritten "PCP" records indicating that he smoked from the ages of 14 to 21 years old); PSR,

---

    below 80 mm Hg.
    Stage 1 hypertension is a systolic pressure ranging from 130 to 139 mm Hg or a diastolic pressure ranging from 80 to 89 mm Hg.
    Stage 2 hypertension is a systolic pressure of 140 mm Hg or higher or a diastolic pressure of 90 mm Hg or higher.

Mayo Clinic, *High Blood Pressure (hypertension)*, https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/diagnosis-treatment/drc-20373417 (last visited December 23, 2020).

[11] *Id.* According to Wikipedia, "white coat hypertension," more commonly known as white coat syndrome, is a phenomenon in which people exhibit a blood pressure level above the normal range, in a clinical setting, although they do not exhibit it in other settings. It is believed that the phenomenon is due to anxiety experienced during a clinic visit.

ECF No. 36 ¶ 94 (noting that Giacomi "reported he is currently prescribed Wellbutrin for smoking cessation . . . ."). According to the CDC, "[b]eing a current or former cigarette smoker increases your risk of severe illness from COVID-19."[12] Thus, assuming Giacomi's report of his history of smoking is true, and I have no reason to believe that it is not, his past use of cigarettes increases his risk of severe illness from COVID-19. His medical records do not appear to support his assertion that he suffers from asthma, however, and he has not indicated that he has been diagnosed with or requires treatment for that condition.[13] As a result, I find that he likely does not face any increased risk of severe illness from COVID-19 based on his claim of asthma. Nevertheless, based on my discussion of the Section 3553(a) factors below, I would reach the same result even if he did.

While Giacomi faces an increased risk from COVID-19 under the CDC guidelines due to his obesity and history of smoking,[14] I find that these conditions are insufficient to warrant a reduction in his term of imprisonment when the factors in 18 U.S.C. § 3553(a) are taken into account, as they must be under Section 3582(c)(1)(A). Though the number of COVID-19 infections at FCI Danbury has increased in recent weeks, which may increase Giacomi's risk of infection, the Section 3553(a) factors—especially the need to promote respect for the law and

---

[12] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 7. The parties both state that a history of smoking "might" increase an individual's risk. However, CDC guidance with respect to smoking was updated since the parties filed their respective memoranda to reflect that a history of smoking does increase an individual's risk.

[13] Giacomi's only documentation supporting his contention that he suffers from asthma is a reference in a record from 2009, which lists "asthma" among other conditions. ECF No. 46 at 15; ECF No. 47 at 12. In any case, according to the CDC, "[h]aving moderate-to-severe asthma might increase your risk for severe illness from COVID-19." Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 7. The parties have not identified, and the Court has not found, anything in Giacomi's records indicating that he suffers from "moderate-to-severe" asthma.

[14] The CDC guidelines state that, with respect to people with multiple underlying conditions: "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 7. As a result, Giacomi's obesity and history of smoking appear to increase his overall risk level more together than each condition would on its own. The CDC does not provide any indication of the extent of the increased risk due to multiple underlying conditions.

6

reflect the seriousness of the offense—still tip the scale against the requested reduction in his term of imprisonment.

As detailed in the Government's memorandum, Giacomi is a former attorney who defrauded his clients, friends, and family members, including elderly clients over the age of 90, over a two-and-a-half year period for a total of more than $400,000. ECF No. 4 at 3; ECF No. 50 at 1, 3. Though the dollar amount of the loss is substantial, the primary drivers of the sentence I imposed were the need to reflect the seriousness of the offense and the need to promote respect for the law. ECF No. 37 at 1. Giacomi was a lawyer who abused the trust that his clients, his friends and family, and society as a whole placed in him. His conduct left his victims traumatized—and in some cases, without any relief for their financial loss caused by his abuse of that trust—and damaged the legal profession by eroding the trust that his victims, and our society, places in lawyers. ECF No. 50 at 10-11; PSR, ECF No. 36 ¶¶ 12-49. It would not be consistent with the purposes of promoting respect for the law or reflecting the seriousness of the offense to release from prison a lawyer who stole large sums from some of his most vulnerable clients after serving a little more than half his sentence.[15]

In addition, the information in his medical history, ECF No. 52 at 4-6 (health services encounter dated October 17, 2019 in which Giacomi was evaluated for injuries that he was "not aware [he] had," that were reportedly caused by his slipping in yogurt, and that included abrasions and scratches to face, neck, and right arm; the provider observed that Giacomi's "[p]upils [were] dilated and eyes [were] blood shot", he was "sweating profusely", he was "very talkative and erratic", and "[h]e [was] possibly under the influence of unknown substance."); *id.* at 10 (describing an incident on February 18, 2020 where Giacomi was not awake for the 4:00 p.m.

---

[15] Based on the projected date of release in Giacomi's disciplinary report, he has served approximately 17 months out of a total of 29 months in prison, or approximately 59 percent of his term of imprisonment. *See supra* note 1.

count and noting that "[h]e continues to struggle with entitlement and responsibility."), and the recent disciplinary episode that occurred in October 2020, ECF No. 61 at 1-2 (finding Giacomi committed the act of "assaulting any person (minor)" as charged), raise concerns implicating two other sentencing purposes in Section 3553(a)—specific deterrence and protecting the public. Although the records do not include hard evidence that Giacomi is continuing to use illegal substances, they are suggestive of that in a number of places, as noted above and as described by the Government. ECF No. 50 at 11-13. And his recent erratic behavior, which included an assault on staff (though not one resulting in injury) is hardly grounds for the Court to conclude that he has been rehabilitated, poses no threat to the public, or would be specifically deterred from criminal conduct. The fact that his criminal conduct in this case was driven in part by his addiction to substances suggests that the evidence of continued substance abuse, circumstantial though it may be, should weigh against release. *See* ECF No. 36 ¶¶ 75-100; ECF No. 46 at 16. As a result, after considering the facts here in light of the 3553(a) factors, I cannot find the requested reduction in Giacomi's term of imprisonment is warranted.

I do not take lightly the danger that COVID-19 poses to inmates—and especially those who are medically vulnerable. And although Giacomi has demonstrated he faces an increased risk of severe illness from COVID-19 as described above, I find that, when the Section 3553(a) factors are accounted for in this case, the risk to Giacomi's health posed by COVID-19 does not warrant ending his term of imprisonment. I therefore must deny this motion.

For the foregoing reasons, Giacomi's motion to reduce sentence (ECF No. 45) is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
          December 29, 2020

9